UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALSTOM TRANSPORT USA, INC.,<br>Petitioner,<br>v.<br>INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS LOCAL 18, and FLUOR FLATIRON BALFOUR BEATTY DRAGADOS DBJV, an unincorporated joint venture, d/b/a LINXS CONSTRUCTORS<br>Respondents. | Case No. 2:26-cv-7704-CV (SKx)<br>**ORDER DENYING MOTION TO REMAND [22]** |

On August 14, 2026, Petitioner Alstom Transport USA, Inc. ("Petitioner" or "Alstom") filed a Motion to Remand ("Motion"). Doc. # 22-1 ("Mot.").[1] On September 11, 2026, Respondent International Union of Elevator Constructors, Local 18 ("Union" or "IUEC") filed an opposition. Doc. # 29 ("Opp."). Alstom filed a reply brief on September 18, 2026. Doc. # 31 ("Reply"). After considering the papers filed, the Court concludes that

[1] Petitioner also filed a Motion to Stay Case Pending Ruling on the Motion to Remand. Doc. # 24. However, the Parties later stipulated to withdraw the Motion to Stay. Doc. # 30.

this matter is appropriate for resolution without a hearing. S*ee* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons discussed below, the Court **DENIES** the Motion.

## I. INTRODUCTION

On June 22, 2026, Alstom filed a Petition to Vacate Arbitration Award ("Petition") in the California Superior Court. Doc. # 1-1 at 130.[2] Through its Petition, Alstom seeks to vacate an award arbitrator David Weinberg rendered following an *ex parte* arbitration that occurred on December 5, 2025. *Id.* at 132.

IUEC removed the action to this Court on July 15, 2026. Doc. # 1 ("NOR"). The Notice of Removal asserts that this Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this dispute arises under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *Id.* at 5.

## II. BACKGROUND

This dispute arises from Alstom's work on the Automated People Mover currently under construction at Los Angeles International Airport. Doc. # 1-1 at 131. Under a subcontract with Respondent Fluor Flatiron Balfour Beatty Dragados DBJV, doing business as LINXS Constructors ("LINXS"), Alstom agreed to design, supply, and commission trains for the people mover and to design, supply, and commission the automatic train control system, the traction power systems, and various other electrical and mechanical systems that will support the people mover. *Id.*

On April 28, 2025, IUEC asserted that Alstom is subject to the Los Angeles Department of Airports Construction Project Labor Agreement (the "PLA"). *Id.* Alstom, however, denies that it is subject to the PLA and denies that the PLA covers the work it performed. *Id.* at 132. IUEC, maintaining that Alstom is subject to the PLA and that it covers Alstom's work on the people mover, initiated a grievance process against Alstom and LINXS under the PLA. *Id.* IUEC eventually moved the grievance to arbitration under

---

[2] All record citations reflect CM/ECF pagination.

the PLA's arbitration terms. *Id.* Alstom continued to deny that it is subject to the PLA and elected not to participate in the arbitration hearing that occurred on December 5, 2025. *Id.*

Following the December hearing, the arbitrator issued an award in IUEC's favor. In his March 24, 2026 Award (the "Award"), the arbitrator found that Alstom is bound by the PLA; that the PLA covered the work at issue; and that under the PLA, Alstom should have paid the Union's national wage and benefit rates. *Id.* at 137; NOR at 3. Alstom's Petition seeks an order from the Court that vacates the Award, declares the Award unenforceable, awards Alstom costs, and grants any other appropriate relief. Doc. # 1-1 at 149.

On July 15, 2026, IUEC removed the action to this Court asserting federal-question subject-matter jurisdiction. NOR at 5–9. Alstom filed the instant Motion to Remand arguing that this Court lacks subject-matter jurisdiction over its Petition because the Petition does not invoke any violation of a labor contract or provision therein, arises independently from the PLA, and does not require the Court to interpret the PLA. Mot. at 9. Alstom also argues that IUEC's removal was procedurally defective as IUEC failed to obtain LINXS's consent prior to removal. *Id.* at 16–17.

## III. LEGAL STANDARD

Federal courts are courts of "limited jurisdiction," possessing "only that power authorized by the Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); U.S. Const. art. III, § 2, cl. 1. District courts are presumed to lack jurisdiction unless the contrary appears affirmatively from the record. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). Thus, when a suit originates in state court, a defendant may remove to federal court only when the suit could have been filed in federal court originally. 28 U.S.C. § 1441(a). "The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000." *Jackson v. Specialized Loan Servicing, LLC*, 2014 WL 5514142, at *6 (C.D. Cal. Oct. 31, 2014).

"The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress." *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). "[T]he removal statute is strictly construed against removal jurisdiction," and the party invoking the removal statute bears the burden of establishing federal jurisdiction. *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation modified). "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (citation modified). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citation modified).

## IV. DISCUSSION

Section 301 of the LMRA is a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 209 (1985). That federal common law preempts any state cause of action to interpret or enforce a collective bargaining agreement. *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 689 (9th Cir. 2001). "Once preempted, any claim purportedly based on a state law is considered, from its inception, a federal claim and therefore arises under federal law." *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1085 n.6 (9th Cir. 2025) (citation modified) (quoting *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007)).

Here, the Parties dispute whether Alstom's Petition to vacate the Award is preempted under the two-part *Burnside* test. Mot. at 9–10; Opp. at 9–12. The Parties also dispute whether LINXS's consent was required for IUEC to remove this action to federal Court. Mot. at 16–17; Opp. at 25–26. For the reasons discussed below, the Court finds that Alstom's Petition is preempted under the LMRA and that IUEC did not need LINXS's consent to remove this action.

///

### A. The LMRA Preempts Alstom's Petition to Vacate the Award.

In the Ninth Circuit, courts apply a two-part test to determine if § 301 preempts a plaintiff's claim. *Renteria-Hinojosa*, 150 F.4th 1076, 1088–89. Section 301 preempts a state-law claim only where it (1) "arises entirely from" a collective bargaining agreement or (2) "requires interpretation of" the agreement. *Id.* As relevant here, the LMRA can be used as a basis for federal question jurisdiction over petitions to confirm or vacate certain labor arbitration awards. *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 835 (9th Cir. 2004) (collecting cases); *see also Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987) (holding a district court has jurisdiction under § 301 "to vacate or enforce a labor arbitration award"). Here, Alstom's claim, for vacatur of a labor arbitration award, is preempted under either part of the disjunctive test.

*First*, Alstom's Petition arises entirely from the PLA. To determine whether a right is independent of a collective bargaining agreement ("CBA") (i.e., the test's first part), the Court must focus its inquiry on "the *legal* character" of the claim. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016) (emphasis original). "Only if the claim is founded directly on rights created by a CBA does § 301 preempt it." *Id.* (citation modified). Here, because Alstom's claim for vacatur of the Award is founded directly on rights created by the PLA,[3] "the claim is preempted, and [the] analysis ends there." *Id.* at 1032. Whether Alstom is bound by its terms or not, the PLA contains the relevant arbitration provision, and the arbitrator rendered the Award under the PLA's terms.

---

[3] Alstom's attempt to distinguish *Flores v. Dignity Health* on this point is unpersuasive. In *Flores*, the Ninth Circuit affirmed an order denying a motion to remand because the plaintiff's claim, to confirm a labor arbitration award, depended "centrally on rights conferred by a collective bargaining agreement." 787 F. App'x 471, 471 (9th Cir. 2019). The *Flores* court found the CBA was the "only source" of the plaintiff's claim. *Id.* Like *Flores*, here, the only source of Alstom's claim is the PLA. Regardless of whether Alstom seeks to assert a right arising under state law, that right (to vacate an arbitration award) arises solely because an arbitrator issued the Award under the PLA's terms.

*Second*, even if Alstom's claim was not preempted under the test's first part, the claim is also preempted under the test's second part. To determine whether the claim is substantially dependent on analysis of the PLA, the Court must determine whether the claim requires it to "interpret" the PLA as opposed to merely "looking to" the PLA. *Id.* at 1033 (holding that "interpret" means something more than to "consider," "refer," or "apply"). Here, to determine whether Alstom is bound by the PLA and to determine whether Alstom violated the PLA, the Court must interpret the PLA. *See, e.g.*, *Monroe v. Parball Corp.*, No. 05-0264-PMP (LRLx), 2005 WL 8162293, at *4 (D. Nev. Aug. 11, 2005) ("Generally, a court considering whether to confirm an award sought and arbitrated pursuant to a CBA will have to interpret the CBA."). Thus, § 301 preempts Alstom's Petition under either part of the preemption test.

Alstom relies on *Textron* and *Nu Image* to support its argument that the Court lacks jurisdiction over its Petition; however, each authority is readily distinguishable.

In *Textron*, a union filed a federal lawsuit alleging that it had been fraudulently induced into signing a CBA. *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 655 (1998). The union sought, among other things, a declaratory judgment that the CBA was voidable. *Id.* In reversing the Third Circuit, the Court found that § 301 did not confer jurisdiction over that controversy because it was a claim that the CBA was invalid—not that it had been violated. *Id.* at 657–85. Nevertheless, the Court held "[t]his does not mean that a federal court can never adjudicate the validity of a contract under § 301(a). That provision simply erects a gateway through which parties must pass into federal court; once they have entered, it does not restrict the legal landscape they may traverse." *Id.* Here, unlike *Textron*, the core of the dispute is that IUEC alleges Alstom violated the PLA. And Alstom's Petition argues both that it is not bound by the PLA *and* that the arbitrator misinterpreted the PLA. Doc. # 1-1 at 145–49.

In *Nu Image*, like *Textron*, Nu Image sought a declaratory judgement that part of the CBA at issue was invalid due to the union's intentional and negligent misrepresentations.

*Nu Image, Inc. v. Int'l All. of Theatrical Stage Emps., Moving Picture Technicians, Artists & Allied Crafts of United States, Its Territories & Canada, AFL-CIO, CLC*, 893 F.3d 636, 637 (9th Cir. 2018). The Ninth Circuit found that Nu Image failed to pass through *Textron's* jurisdictional gateway because there was no allegation that the CBA had been violated. *Id.* at 640. While Alstom, like Nu Image, seeks to avoid the collective bargaining agreement, here, an arbitrator found that Alstom violated it. Thus, this case arises from IUEC's allegation, and the arbitrator's finding, that Alstom violated the PLA; to adjudicate Alstom's Petition, the Court must evaluate whether the arbitrator's Award, issued pursuant to the PLA's terms may stand.

The procedural posture here is not that of a company seeking to avoid a CBA immediately after having been served a demand under its grievance procedures. Alstom seeks vacatur of an Award rendered under the PLA—arguing that it is not bound by the PLA *and* arguing that the arbitrator's Award is substantively invalid. Doc. # 1-1 at 145–49; Reply at 14. Alstom cites no authority to suggest its "secondary and contingent argument" is irrelevant to the Court's jurisdictional analysis under § 301. Reply at 14. Accordingly, this case, unlike *Textron* and *Nu Image*, passes through § 301's jurisdictional gateway.

**B. LINXS's Consent Was Not Required for Removal.**

"When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

Alstom argues that LINXS's consent was required for IUEC to remove this action. Mot. at 16–17. However, in its Notice of Removal, IUEC states, "as reported by Counsel for LINXS Constructors on July 14, 2026, LINXS Constructors has not yet been served with process of the Petition in accordance with California law. Accordingly, the consent of LINXS Constructors is not necessary for removal." NOR ¶ 28. In its Opposition to Alstom's Motion, IUEC attaches an attorney declaration attesting to the fact that LINXS had not been served at the time of removal. Doc. # 29-1 ("Gillman Decl.") ¶¶ 3–6. In its

Reply, Alstom avers that the assertion in the Gillman Declaration is "not true in the first instance" and that IUEC should have explained why it lacked LINXS's consent in its Notice of Removal. Reply at 14–16. However, LINXS provides no evidence to refute the Gillman Declaration and does not address paragraph twenty-eight of the Notice of Removal which, as stated above, explains the absence of LINXS's consent.

Accordingly, because IUEC has provided unrefuted evidence to show LINXS had not been served at the time of removal, LINXS's consent was unnecessary to remove this action. *See, e.g.*, *Ross v. O'Neal*, No. 2:11-cv-06124-JHN (Ex), 2011 WL 5041967, at *1 n.1 (C.D. Cal. Oct. 17, 2011) ("The Notice of Removal states that [co-defendant] was never served with the Summons and Complaint, and therefore, his consent to removal was not required.").

## V. CONCLUSION

For the foregoing reasons, the Court DENIES Alstom's Motion to Remand.

**IT IS SO ORDERED**.

Dated: November 10, 2026

Cynthia Valenzuela
HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE